Lawrance A. HOFFMAN, doing business as Lawrance Trading Company, Plaintiff,

v.

HERDMAN'S LTD. et al., Defendants.

No. 66 Civ. 2760.

United States District Court
S. D. New York.

Dec. 5, 1966.

Lewy, Rosoff, Stream, Bernstein & Stern, New York City, for plaintiff; Arnold C. Stream, New York City, of counsel.

Joseph T. King, New York City, for defendants.

## OPINION

WEINFELD, District Judge.

Whatever the merits of plaintiff's antitrust claims, he has set forth sufficient facts in his opposing affidavit to withstand the defendants' motion for summary judgment and dismissal of his complaint,[1] except as to the so-called Coulter defendants, Koch (sued herein as "Coch"), and Goulekas.

The claimed conspiracy and other antitrust conduct is alleged to have commenced shortly after the agreement of January 5, 1966 was entered into between the plaintiff and the defendant Etablissements Agache, S. A. It is not denied that Charles P. Coulter, Jr. sold his stock in, and resigned as a director of, Herdman's Linen Yarns, Ltd. (Herd-

---

1. See Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L. Ed.2d 458 (1962); Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); Julius M. Ames Co. v. Bostitch, Inc., 240 F. Supp. 521 (S.D.N.Y.1965). Cf. House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2d Cir. 1962); Bender v. Hearst Corp., 263 F.2d 360, 369–370 (2d Cir. 1959).

man's-New York) on May 19, 1964 and since then has had no official connection with it. The lack of any basis for a claim against Charles P. Coulter, Jr. and Coulter Fibres, Inc. is emphasized by plaintiff's own opposing affidavit wherein he acknowledges they were named as defendants upon his "belief" that they were "involved and implicated in the unlawful scheme and plan"; that they and the defendant D. Jack Davis Company are "part of an interlocking facility with the Herdman's combine and that they are conducting business according to a common plan and policy." The foregoing is a repetition of the general allegations of the complaint. Not a single evidentiary statement is submitted to support the claims against the Coulters. Plaintiff's "belief" gains no support from the allegation that they dealt in linen yarn and occupied the same office space as Herdman's-New York, as did the D. Jack Davis Company, owned by D. Jack Davis, who is the chief officer and a director of Herdman's-New York. Assuming that this is so (it is denied), the mere circumstance that persons share office space is, without more, insufficient to ground a charge of conspiring with their co-tenants.[2] Mere association does not constitute a conspiracy.[3]

So, too, there appears to be no factual basis to support the inclusion as defendants of Koch, the certified public accountant for Herdman's-New York, and its sales employee, Charles Goulekas. Plaintiff's sole explanation, again without evidential support, for naming them is that "the remaining directors and key employees of Herdman's-New York have been joined as defendants because it is inconceivable that a giant combine of the sort which has emerged from the combination of the Herdman group and the Agache group could have gone unnoticed by these persons." Neither Koch nor Goulekas was an officer or director of Herdman's-New York. However, both were swept in as defendants by the dragnet charge they were key employees, but there is no allegation that in that capacity they played any role in shaping policy decisions or the corporation's intentions.[4]

2. In granting summary judgment, this court has said: "Fully recognizing that conspiracies are rarely proved by direct evidence, nonetheless some evidence, however slight, must be offered of a fact from which a reasonably-minded person can draw an inference of the alleged conspiracy." Morgan v. Sylvester, 125 F. Supp. 380, 389 and n. 31 (S.D.N.Y.1954), aff'd, 220 F.2d 758 (2d Cir.), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L. Ed. 768 (1955). See also Heekin Can Co. v. Kimbrough, 196 F.Supp. 912, 926–927 (W.D.Ark.1961) (absent other evidence, court, after trial, would not infer conspiracy to defraud from the fact that one defendant maintained a bonded warehouse on the premises of the other), and n. 3, infra. Compare, Tillamook Cheese & Dairy Ass'n v. Tillamook Co. Creamery Ass'n, 358 F.2d 115, 117 n. 3 (9th Cir. 1966) (court specified several alleged facts relating to conspiracy which foreclosed summary judgment).

3. See Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); United States v. Aviles, 274 F.2d 179, 190 (2d Cir.), cert. denied sub nom. Genovese v. United States, 362 U.S. 974, 80 S.Ct. 1059, 4 L.Ed.2d 1010 (1960); Evans v. United States, 257 F.2d 121, 126 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958). See also Viking Theatre Corp. v. Paramount Film Distrib. Corp., 320 F.2d 285, 299–300 (3d Cir. 1963), aff'd, 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964); Delaware Valley Marine Sup. Co. v. American Tobacco Co., 297 F.2d 199, 204–205 (3d Cir. 1961), cert. denied, 369 U.S. 839, 82 S. Ct. 867, 7 L.Ed.2d 843 (1962); Molinas v. National Basketball Ass'n, 190 F.Supp. 241 (S.D.N.Y.1961).

4. Tillamook Cheese & Dairy Ass'n v. Tillamook Co. Creamery Ass'n, 358 F.2d 115, 118 (9th Cir. 1966); Bergjans Farm Dairy Co. v. Sanitary Milk Producers, 241 F.Supp. 476, 482 (E.D.Mo.1965); United States v. Lorain Journal Co., 92 F.Supp. 794, 800 (N.D.Ohio 1950), aff'd, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951).

"Inconceivable" as it may appear to the plaintiff that they were not involved, he has failed to submit a single evidentiary fact which in any way relates these defendants to the claimed antitrust violations or to justify their inclusion as defendants. And even if these defendants "noticed" matters, it did not cast them in liability as co-conspirators absent a showing they knowingly participated in and attached themselves to the conspiracy.[5]

The controlling authorities [6] in this Circuit on the summary judgment rule, sometimes referred to as "restrictive" [7] in its application, are not without their outer limits; while the rule is to be applied cautiously so as not to deprive a party of his right to a trial where a genuine issue of fact exists, there must be a showing that such an issue does exist, and mere conclusory allegations are not a substitute for such proof.[8]

Formal allegations which are not supported evidentially by affidavits do not raise a triable issue of fact and are insufficient to prevent the entry of summary judgment.[9] The 1963 amendment to the Rule, which provides that " * * * an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial," was designed to prevent the use of conclusory and unsupported pleading allegations to ward off summary judgment where the moving party made a substantial evidential showing.[10] What the Court of Appeals said in Dressler v. MV Sandpiper [11] is pertinent:

"[V]ague and conclusory allegations * * * [are not] sufficient to forestall the award of summary judgment. The highly general assertions * * * buttressed by no specific facts or evidentiary data, are hardly the sort of concrete particulars which the amendments sought to require."

Here there is nothing but plaintiff's unsupported "belief" that the Coulter defendants were, and that it is "inconceivable" that the accountant and the sales employees were not, involved in the alleged antitrust conduct. This is insufficient to foreclose the use of summary judg-

5. Tillamook Cheese & Dairy Ass'n v. Tillamook Co. Creamery Ass'n, 358 F.2d 115, 118 (9th Cir. 1966) is particularly in point with respect to Koch, the certified public accountant. The court, in discussing the liability of defendant's counsel, stated he would not be held liable if his role had been "only that of a legal adviser." Only if "he goes beyond that role and, acting by himself or jointly with others, makes policy decisions for the corporation" does he subject himself to liability. See also nn. 3 and 4, supra.

6. Bromberg v. Moul, 275 F.2d 574 (2d Cir. 1960); Subin v. Goldsmith, 224 F.2d 753 (2d Cir.), cert. denied, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779 (1955); Colby v. Klune, 178 F.2d 872 (2d Cir. 1949); Bozant v. Bank of New York, 156 F.2d 787 (2d Cir. 1946); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946).

7. Dressler v. MV Sandpiper, 331 F.2d 130, 132 (2d Cir. 1964).

8. Cf. Interamerican Refining Corp. v. Superior Oil Co. of Venezuela, 224 F.Supp. 35, 36 (S.D.N.Y.1963).

9. Union Ins. Soc. of Caton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965); Dressler v. MV Sandpiper, 331 F.2d 130, 133 (2d Cir. 1964); Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964); Weyerhaeuser Co. v. Gershman, 324 F.2d 163 (2d Cir. 1963).

10. Committee Note of 1963 to Subdivision (e) quoted in 6 Moore, Federal Practice ¶ 56.01[14], and discussed at ¶ 56.-22[2].

11. 331 F.2d 130, 133 (2d Cir. 1964).

ment "to pierce the allegations of fact in the pleadings."[12]

As to the defendants Herdman's Ltd. and Etablissements Agache, S. A., their local activities in connection with the sale, distribution and warehousing or stockpiling of their products in substantial quantities fully establish that each transacts business within this District. Their activities also extend to the promotion of sales through sales agents and exclusive distributors, the shipment into this District of substantial quantities of their products, the periodic business visits to this District of their officials, and particularly, in the case of Agache, the local participation of their representatives in promoting sales and the discussions with local customers of production requirements and shipping practices. The facts submitted abundantly establish that each is subject to the jurisdiction of this court; that venue is proper;[13] and service of process was properly effected in accordance with Rule 4(i) (D). Their motions to dismiss for lack of jurisdiction are denied.

Insofar as the defendants John A. Fishbourne, Patrick Herdman, Gilles Crespel, Joel Fleurier and the Estate of Mark Drouliers are concerned, they have not been served with process and there is no occasion to rule with respect to them.[14]

The time of the moving defendants to answer is extended twenty (20) days from the date hereof.

---

12. Thomas v. Mutual Benefit Health & Acc. Ass'n, 220 F.2d 17, 18 (2d Cir. 1955); Engl v. Aetna Life Ins. Co., 139 F.2d 469, 472 (2d Cir. 1943).

13. United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); B. J. Semel Assoc., Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F. Car Corp., 46 F.2d 623, 625 (1st Cir. 2d 827, 830–833 (D.C. Cir. 1966); Jeffrey-Nichols Motor Co. v. Hupp Motor 1931). Cf. Stiftung v. V. E. B. Carl Zeiss, Jena, 32 F.R.D. 608 (S.D.N.Y. 1963); Abrams v. Bendix Home Appliances, Inc., 96 F.Supp. 3 (S.D.N.Y.1951).

14. Cf. Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc., 240 F.2d 814, 816 (5th Cir. 1957).